THOMAS B. CRAWFORD *vs.* ZACHARIAH BERRY.—*June,*
1834.

In a suit by the assignee of a single bill against the assignor, the obligee, on
the failure to pay by the obligor, and on the question of due diligence by
the assignee in pursuing the obligor, the admissibility of parol evidence
of the notorious insolvency of the obligor cannot be questioned. It may
also be proved by other evidence, such as a discharge of the obligor under
the insolvent law, or the return of *nulla bona* to a *fieri facias* sued out on
a judgment obtained against him on the single bill.

B sold C certain oxen, and received on account of that sale an assignment
of a single bill executed by M to C. B brought suit against M on the
single bill to the next succeeding term of the court, and obtained a judg-
ment in regular course by confession, with a stay of execution for thirty
days. He afterwards sued out a *ca sa* which was returned *cepi* and enter-
ed, not called by consent of parties.—HELD, that if M had been notori-
ously insolvent at the time of the assignment, or had become so before
the first term of the court after the assignment, there would have been
no obligation on the assignee B to have sued him; and that if M was insol-
vent at the time of the rendition of the judgment, and no loss had arisen
from the stay or entering the execution not called by consent, no *laches*
could be imputed to the assignee of the single bill.

The court in refusing to grant the defendant's prayer, that for certain speci-
fied reasons the plaintiff is not entitled to recover, ought not to go further
and assume that the parol evidence of the plaintiff necessarily establishes
his claim, for that would be an encroachment on the province of the
jury.

Where a vendor of chattels accepts from the vendee the single bill of a
third person on account of his purchase money, he is bound to use active
diligence in pursuing the obligor for a recovery of the sum due on the
bill, so that nothing should be lost by the *laches* of the vendor.

APPEAL from *Prince Georges* county court.

This was an action of *Assumpsit,* brought by the appellee
against the appellant, to recover the price of certain cattle
sold and dlivered by the plaintiff to the defendant, and on
account of which, the defendant on the 12th July, 1827,
assigned to the plaintiff the single bill of a certain *John A.
Magruder* for $175, dated January 12th, 1825, payable six
months after date.

The declaration contained three counts. 1st, a special count on the assignment. 2nd, an *indebitatus assumpsit* for the price of the cattle; and 3d, a *quantum valebat.* Issue was joined upon the plea of *non-assumpsit.*

1. At the trial of the cause, the plaintiff to support the issue joined on his part, swore to the jury *Edward W. Belt,* formerly sheriff of the county, by whom he offered to prove, that *John A. Magruder* mentioned in the plaintiff's declaration, was wholly insolvent on or about the month of October, 1828, and has so continued up to the present time. To the admissibility of this testimony the defendant by his counsel objected, on the ground that the fact of the insolvency of the said *John A. Magruder* could only be proved in the present action, either by the production of the record of his regular discharge as an insolvent petitioner, or a certificate thereof, or by showing that a *fi fa* had issued on said judgment, which had been returned *nulla bona;* but the Court (KEY, and DORSEY, A. J.) permitted the testimony of the said *Edward W.* to go to the jury. The defendant excepted.

2. The plaintiff then proved to the jury, that on or about the 12th July, 1827, the plaintiff sold and delivered to the defendant certain oxen for the sum of $175, and on the same day received from the defendant on account of said purchase an assignment of a single bill executed by one *John A. Magruder,* to the said defendant for the sum of $175, which said single bill and assignment are in the following words, to wit.

"$175. Six months after date, I promise to pay *Thomas B. Crawford* or order, one hundred and seventy-five dollars, for value received of him, with legal interest thereon from date, witness my hand and seal this 12th day of January, 1825. *John A. Magruder.* (*Seal.*) (Endorsed.)"

" I hereby assign all my right, title, and interest, in and to the within note to *Zachariah Berry,* for value of him received. *T. B. Crawford.*"

12th July, 1827.

He then read in evidence to the jury, the record and proceedings of a suit brought to the October term of this court in the year 1827, on the single bill aforesaid, and which was prosecuted to final judgment at October term 1828.

The defendant then on his part, proved to the jury by an entry on the docket of said court, that the said judgment was rendered subject to a stay of execution for thirty days, and also read in evidence the *ca. sa.* issued on said judgment, and the return, &c. thereon, from which it appears that to the April term of said court in the year 1829, the said *ca. sa.* was returned "*cepi*," and had been entered, "not called by consent of parties." The plaintiff then offered to prove by a competent witness, that at the time of the rendition of the judgment, and continually afterwards up to this time, the said *John A. Magruder* had not property which could be levied on, and was totally insolvent.

Whereupon the defendant by his counsel prayed the court to instruct the jury, that the plaintiff in this action was not entitled to recover. 1. Because from the testimony aforesaid, it appeared that the plaintiff had consented to take the said judgment, subject to a stay of execution for thirty days. 2. Because the *ca. sa.* which issued thereon had been entered, not called by consent of parties; which instruction the court refused to give; but were of opinion and so instructed the jury, that if they should find from the evidence in this cause, that at the time of the rendition of the judgment, and the said return of said execution and entering the same "not called," the said *Magruder* was insolvent and incapable of paying his debts, and has continued so ever since, that the plaintiff was entitled to a verdict for such sum as they shall find due from the sale of the oxen aforesaid. The defendant excepted, and the verdict and judgment being against him, he brought the present appeal.

The cause was argued before Buchanan, Ch. J., and Stephen, Archer, and Dorsey, J.

*Alexander*, for the appellant.

The first exception is abandoned. Upon the second he contended, that the stay of execution allowed on the judgment against the said *John A. Magruder*, and the entry of the *ca. sa.* "not called," would have released the appellant from his responsibility to the appellee, if even he had assumed any, and the instruction prayed for by the appellant as stated in the second exception, ought to have been granted. *Act of* 1763, *ch.* 23, *secs.* 9, 10. 2 *Bro. Ch. C.* 579. *Theobold,* 75. 2 *Cox,* 63. 2 *Swanst.* 185, 189.

2. That although the court may have done right in refusing the instruction prayed for by the appellant, still the direction which was actually given to the jury was erroneous, inasmuch as every fact essential to the plaintiff's right to recover, except the insolvency of *Magruder*, is assumed by the court, instead of being submitted to the jury as they should have been. There is nothing in the record to show that the defendant was to pay cash for the oxen, if the paper assigned proved to be bad. Nothing to show that he guarantied it to be good, or that the plaintiff was not willing to receive it in payment, and it was not competent to the court to assume that the defendant had come under any such engagement.

*T. F. Bowie*, for the appellee.

Every assignment of negotiable paper (as a bond or a single bill is in this State) imports a valuable consideration, and will subject the assignor to an action of general *indebitatus assumpsit* at the suit of the assignee, in case the bond is not paid by the obligor. This doctrine is supported by the clearest principles of the common law, and has not been affected by the act of 1763, *ch.* 23. That act, so far as it regards the liability of the assignor to his imme-

diate assignee, is merely declaratory of the common law, and only changes the common law so far as it gives to the assignee of a bond the right to sue in his own name the obligor, which the assignee could not do before. Prior to the statute of 3d and 4th *Ann*, by which promissory notes were made negotiable, it was held that at common law the endorser of a promissory note was liable to his immediate endorsee, if the note was not paid by the maker, upon the principle that the endorsement imported a valuable consideration paid, which, of itself, would support general *indebitatus assumpsit—Ld. Raymond's Reps.* 443. *Kyd on Bills*, 109. And no distinction in this respect exists at common law between promissory notes and bonds. *Mackie vs. Davis*, 2 *Wash. Rep.* 219. *Norton vs. Rose*, 2 *ib.* 233. *Goodall vs. Steuart*, 2 *Hen. and Mun.* 105, 113, (*note.*)

But it has been said that the assignee must use due diligence against the obligor before he can resort to the assignor for payment. The question of due diligence is for the court to decide under all the circumstances of each case. *Boyer vs. Turner*, 3 *Harr. and Johns.* 285. And it is sufficient for the assignee to show that the obligor was *unable* to pay the debt, or that some other thing or casualty happened whereby he was unable to receive or recover the debt from the obligor. 3 *Harr and Johns.* 287. If the obligor becomes insolvent recently after the assignment, it is not necessary for the assignee even to bring suit. *Goodall vs. Steuart*, 2 *Hen. and Mun.* 114 (*note.*) And whenever any degree of laches or neglect is imputed to him, it is a sufficient answer for him to show that due diligence would not have altered the case. *Ib. note* (1.) There is nothing in the record to show that *Berry* agreed to give *Magruder* a stay of execution for thirty days. The stay was entered by the order of the court, and it will be presumed that it was done in conformity with the established usage of the court. If the judgment however had been rendered without the stay of execution, the case would not have been altered, as the proof clearly shows, that *Magruder* had no property of any de-

scription to be reached by a *fieri facias*, and being totally insolvent, no injury was done to the assignor, and none of his rights affected. The same observations may be applied to his entering the *ca. sa. not called by consent*. A different course would not have rendered the execution available, and the law will not require a man to do that which would be nugatory and fruitless. Such a policy of the law would produce a severe and rigorous prosecution against all assignors, without the slightest probability of arriving at any useful or wholesome result.

The argument of the appellant's counsel, that the assignor is to be held in the light of a security for the payment of the bond, and that therefore any indulgence or extension of time to the obligor whom he regards as principal, will release the assignor, is not applicable to the principles of this case. As between the assignee and assignor, the latter is clearly the principal, it is with him that the assignee deals exclusively; upon his faith and credit alone the bond is purchased. The circumstances of the obligor are not known to the assignee, and there is no privity whatever between them. From the entire absence of such essential requisites to constitute the relation of *principal*, it is difficult to understand how the obligor in a bond can be regarded in the light of principal to the assignee. 2 *Wash. Rep.* 231.

The objection taken to the right of the appellee to recover, on the ground that the assignment was not made according to the provisions of the act of 1763, *ch.* 23, *sec.* 10, cannot now be urged in this court. The objection was not raised in the court below, and the record presents no such point to this court; *act of* 1825, *ch.* 117; but even if the objection had been raised in the court below, the appellee's right to recover upon the second and third counts in the declaration would have been unimpaired, and the court below were right in so instructing the jury. The acceptance of a note or bill of a third person for a pre-existing debt, is no payment or extinguishment of said debt, and the original

cause of action remains in full force. *Glenn vs. Smith,* 2 *Gill and Johns.* 494. *Insurance Company vs. Smith,* 6 *Harr. and Johns.* 166. And it is difficult to discover any real and sensible distinction in this respect between promissory notes and bills, and bonds or other sealed instruments. For all the purposes of a present real security for a debt, the one is as available and effectual as the other, and although a bond or single bill is considered in the eye of the law as of a higher nature or security than a promissory note, yet this distinc- tion exists only in the *technical rule* of law, and has no foundation in common sense, or in the practical present ef- fect, and operation of such instruments.

BUCHANAN, Ch. J., delivered the opinion of the court.

The first exception has been abandoned in argument by the counsel for the appellant, and properly abandoned.

The suit is by the assignee of a single bill against the assignor, the obligee, on the failure to pay by the obligor ; and on the question of due diligence by the assignee in pursuing the obligor, the admissibility of parol evidence of the notorious insolvency of the obligor cannot be question- ed. Not that it might not be proved by other evidence, such as the discharge of the obligor under the insolvent law, or the return of *"nulla bona"* to a *fi fa* sued out on a judg- ment obtained against him upon the single bill by the as- signee.

The question presented by the second exception is of a different character. The evidence is, that on the 12th of July, 1827, the appellee sold and delivered to the appellant certain oxen for the sum of $175, and on the same day re- ceived from the appellant, on account of that purchase, an assignment of a single bill executed to the appellant by *John Magruder* for $175, upon which the appellee brought suit against the obligor to the next succeeding term of the *Prince Georges* county court, and obtained a judgment in the regular course, with a stay of execution entered upon the docket for thirty days. He afterwards sued out a *capi-*

*as ad satisfaciendum,* which was returned by the sheriff "*cepi,*" and entered on the docket "not called by consent of parties," and that at the time of the rendition of the judgment, and continually afterwards, *Magruder,* the obligor, had no property that could be levied upon, and was totally insolvent.

Upon this evidence the counsel for the appellant prayed the court to instruct the jury that the appellee was not entitled to recover. 1st. Because he had consented to take the judgment against the obligor in the assigned single bill, subject to a stay of execution for thirty days. And 2dly, because the *ca. sa.* that was issued upon that judgment had been entered, "not called by consent of parties ;" which direction the court refused to give ; and to that refusal to give the instruction prayed, there would have been no objection, if the court could have stopped there.

The declaration contains three *counts.* The first a special count, on the assignment of a single bill ; and the other two, a general *indebitatus assumpsit,* for oxen sold and delivered, and a *quantum valebant.* It is not a case between a surety and creditor, presenting the question whether the creditor has so given time to the principal debtor as to discharge the surety ; but active diligence was imposed upon the appellee in pursuing the obligor for a recovery of the sum due on the bill assigned to him, so as that nothing should be lost by his *laches.* And the question is, whether he did use due diligence ; which is a question for the decision of the court.

If the obligor, *Magruder,* had been notoriously insolvent at the time of the assignment, or had become so before the first term of the court after the assignment, so as to have rendered a suit against him futile, there would have been no obligation on the appellee to institute a suit, and incur the useless cost of a profitless action ; and having instituted a suit on the bill to the first term after the assignment, and obtained a judgment in due and regular course of law, if *Magruder* was notoriously insolvent at the time of the ren-

dition of the judgment, and has continued so ever since, and no loss has accrued either by reason of the judgment being taken with a stay of execution for thirty days, or of the *ca. sa.* being entered "not called by consent," neither the entry of the stay of execution, or of the *ca. sa.* not called by consent, nor both, had the effect to discharge the appellant, the assignor of the bill, from any liability that before existed on account of the sale of the oxen.

If *Magruder* was at the time of the rendition of the judgment, and continually afterwards, "wholly insolvent, and had no property that could be levied upon," the suing out an execution would have been nugatory, and the stay of execution did no injury to any body, and the appellee was under no necessity to pray him in commitment on the return of the *ca. sa.*, and have him put to jail, where under the law of this State he must have been supported at his cost without benefit to any one. Nor need he have sued out a *ca. sa.* at all. A *fieri facias* with the return of *nulla bona,* which must have been made if *Magruder* was insolvent, and had no property to be levied upon, would have been sufficient.

The court then did right in refusing to instruct the jury, that upon the evidence in the cause the appellee was not entitled to recover.

But the court went further, and instructed the jury, "that if they should find from the evidence that at the time of the rendition of the judgment, and the return of the *ca. sa.*, and entering it not called, *Magruder* was insolvent, and incapable of paying his debts, and has continued so ever since, the appellee was entitled to a verdict, for such sum as they should find due from the sale of the oxen." Thus assuming the fact of the sale of the oxen, and that the assignment of the single bill was on account of the prior debt so incurred, which were facts to be found by the jury.

If the appellee sold the oxen to the appellant, and received the single bill of *Magruder* on that account, without an agreement to receive it *as payment* for the oxen, and to

run the risk of its being paid or not, it was not an extinguishment of the debt due for the oxen, which continued liable to be enforced if the assigned bill, without *laches* on the part of the appellee, should not be paid. *Glenn vs. Smith, 2 Gill and Johns.* 432.

But whether that was the character of the transaction, or whether the oxen were exchanged for the bill, or the bill was purchased from the appellant by the appellee, and the oxen given as the consideration, were questions for the jury, and not the court, to decide.

We think therefore, that the instruction of the court to the jury, as set out in the second bill of exception, was wrong, and that the judgment must on that account be reversed, and the cause sent back with a *procedendo.*

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**